IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TYRONE SHELTON,<br>    Petitioner,<br><br>v.<br><br>HAROLD W. CLARKE,<br>    Respondent. | Civil Action No. 7:20-cv-00640<br><br>By:  Elizabeth K. Dillon<br>       United States District Judge |

MEMORANDUM OPINION

Petitioner Tyrone Shelton, a Virginia inmate proceeding *pro se*, filed an original petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, and an amended petition, challenging his incarceration under an order entered by the Winchester Circuit Court on May 24, 2018. The court sentenced Shelton on that date to 10 years in prison for distribution of a schedule I or II controlled substance, third offense, in violation of Virginia Code § 18.2-248. Respondent has filed a motion to dismiss the petition, and the matter is now ripe for disposition. After careful review of Shelton's claims and the record of proceedings in state court, including the video exhibit, the court concludes that the petition must be dismissed for the reasons stated below.

I.  BACKGROUND

In the light most favorable to the Commonwealth, the party prevailing at trial, the evidence supporting Shelton's conviction was stated by the Court of Appeals of Virginia:

> [O]n March 20, 2017, Investigator Steven Kahle of the Northwest Regional Gang and Drug Task Force used a confidential informant to conduct a controlled buy with [Shelton] at a restaurant in Winchester. Kahle searched the informant for drugs, weapons, and money before outfitting him with a special shirt containing a covert camera and an audio wire transmitting device. Kahle gave the informant $1000 in marked bills to buy a half ounce of powder cocaine for $600-700. Kahle drove the informant to within one

block of the restaurant where he was to meet appellant and watched the informant enter the restaurant.

Special Agent Josiah Schiavone arrived at the restaurant about 7:30 p.m. to monitor the transaction from inside the restaurant. [Shelton] was sitting at the bar when Schiavone arrived. The informant entered the restaurant about 8:40 p.m. and sat down next to [Shelton]. After a few minutes, [Shelton] said something to the informant, which Schiavone could not hear, and then [Shelton] and the informant went into the restroom together. Schiavone followed them and was standing outside the restroom door when they came out several seconds later. Schiavone then checked the restroom and found no other persons there. The informant left the restaurant followed by [Shelton].

The informant testified that the drug purchase took place while he and [Shelton] were in the restroom. The informant's audio wire recorded [Shelton] telling the informant that he "should be able to look [at the cocaine] and tell that it's on time," which meant that it was the amount agreed upon and of good quality. [Shelton] also said that he "can keep it coming," and "this should be a regular thing from now on."

The informant did not immediately return to Kahle's car when he left the restaurant because [Shelton] had walked in the direction of Kahle's parked car. Instead, the informant walked in another direction. Kahle followed the informant in his car but lost sight of him for five to ten seconds. The informant stayed in contact with Kahle through his audio wire and by telephone until Kahle picked him up. Kahle then recovered the audio wire and camera, searched the informant, and debriefed him. The informant gave Kahle the cocaine that he had purchased from [Shelton] and $400. Kahle put the cocaine into an evidence bag, sealed it, and placed the bag in a police storage locker, where it remained until another officer transported the bag to the state forensic laboratory for analysis. The laboratory determined that the bag held 17.08 grams of cocaine, slightly more than one-half ounce. Kahle testified that a one-half ounce of powder cocaine was similar in size to a golf ball.

Kahle arrested [Shelton] on March 22, 2017. Kahle recovered $754 from [Shelton's] person while searching him incident to arrest, including $200 in marked bills that Kahle had given the informant to buy cocaine from [Shelton] on March 20, 2017. Kahle obtained a search warrant for [Shelton's] residence in an attempt to locate the other $400 in marked bills, but that money was not recovered. After [Shelton] was taken to the jail, he called

>   the restaurant where he had met the informant and gave the name
>   of the informant to the person to whom he spoke.

*Shelton v. Commonwealth*, No. 0897-18-4, slip op. at 2–3 (Va. Ct. App. March 18, 2019) (per curiam).

At the time of Shelton's arrest on March 22, 2017, he was arrested on the currently contested charge from Winchester and on another charge from Frederick County involving the same informant, and he was held without bail. Following the preliminary hearing in September 2017, Shelton requested new counsel, who was appointed. Counsel filed several pretrial motions, including a motion to suppress, motion in limine, motion to compel discovery, and violation of speedy trial motion. Although the motion to dismiss for speedy trial was denied, counsel successfully precluded use of statements given by Shelton without benefit of *Miranda* and precluded the admission of several potentially prejudicial facts. CCR.[1] at 307–373.

On January 26, 2018, the matter was tried before the jury. The Commonwealth's evidence included the testimony of Investigator Kahle, Agent Schiavone, and the informant, as summarized previously, plus chain of custody evidence from an officer, the forensic analyst from the state lab, and the custodian of telephone records and recordings at the regional jail. The Commonwealth also introduced certified copies of Shelton's prior convictions in 1989 and 1990 for two counts of distribution of cocaine and two counts of possession with intent to distribute cocaine. *Id.* at 1159–1166. Counsel moved to strike the evidence on several grounds, including that the informant was inherently incredible and that the Commonwealth failed to establish a critical link in the chain of custody of the cocaine because the officers lost sight of the informant for several minutes after the alleged transaction with Shelton. The court denied the motion,

---

[1] All references to the Winchester Circuit Court Record in this matter, No. CR17-00643, including transcripts, will be abbreviated "CCR" and will refer to the typed page numbers in the lower right corner of each page.

noting that credibility is a decision for the jury, and if the jury believed the informant's testimony, that was sufficient to establish the chain of custody. *Id.* at 776–789.

The only defense witness was Shelton himself. He testified that he helped at the restaurant as security and had been there since 3:30 or 4:00 in the afternoon. He had met the informant previously, including on a prior occasion when the informant was ejected from the restaurant after striking someone during a fight. Shelton also said he placed a bet with the informant over a football game in early February, and the informant owed him $200 for that bet. They spoke briefly at the bar, where the informant gave him the money he owed. When the informant headed to the restroom, the manager on duty at the cash register signaled that Shelton should follow and keep an eye on him, which he did. Shelton stated that a third person was in the bathroom stall with the door closed, but that the toilet could be heard flushing on the audio recording. Shelton denied selling any cocaine to the informant. *Id.* at 790–829.

Counsel renewed the motion to strike the evidence, which the court again denied. Following jury instructions and closing arguments, the jury adjourned to deliberate around 10:30 p.m. *Id.* at 914. Shortly after midnight, they returned with a verdict finding Shelton guilty of third offense distribution. *Id.* at 925–931. Following a brief sentencing hearing and arguments, the jury imposed a sentence of 10 years, the mandatory minimum sentence. *Id.* at 944–945. On Shelton's motion, the court ordered a pre-sentence investigation report, and the matter was set for a later date to hear post-trial motions.

On January 30, 2018, however, the parties were back in court on defense counsel's motion to withdraw at Shelton's request. *Id.* at 955–963. Eventually, the court appointed new counsel to act as standby counsel for Shelton, and Shelton argued his motion to set aside the verdict on May 11, 2018. *Id.* at 1004–1081. After denying the motion to set aside, on May 24,

2018, the court imposed the sentence recommended by the jury, the mandatory minimum 10 years, followed by six months of post-release supervision. *Id.* at 1084–1115. The court entered its judgment order the same date. *Id.* at 217–220.

Shelton appealed to the Virginia Court of Appeals, arguing that there was a critical failure in the chain of custody, the insufficiency of the evidence, and failure to enlarge the record after the trial to include the drug task purchase form used to refresh Investigator Kahle's memory about the controlled buy. In an opinion dated March 18, 2019, the Court of Appeals denied Shelton's appeal. Gov. Br. Supp. Mot. Dismiss, Ex. 2, Dkt. No. 13-2. Shelton's request for consideration by a three-judge panel was denied on May 7, 2019, and the Supreme Court of Virginia refused his appeal on September 27, 2019. *Shelton v. Commonwealth*, No. 190878 (Va. Sept. 27, 2019).

On October 18, 2019, Shelton filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, alleging ineffective assistance of counsel. One claim alleged that trial counsel was ineffective for failing to seek a cautionary instruction that his prior drug convictions could be considered only as proof of prior convictions, not as proof that Shelton committed the current offense. In his other claim, Shelton alleged that counsel should have objected and/or moved for a mistrial when Investigator Kahle refreshed his memory from a purchase form that had not been disclosed to the defense during discovery, even though it was potentially exculpatory. By opinion dated August 11, 2020, the Supreme Court of Virginia denied the habeas petition, finding neither deficient performance nor prejudice. *Shelton v. Edmonds*, No. 191404 (Va. Aug. 11, 2020).

Shelton filed his timely § 2254 petition in federal court on October 30, 2020, raising the following claims:

1. The Commonwealth's evidence was insufficient to show chain of custody of the cocaine.

2. The evidence was insufficient to support his conviction.

3. Trial counsel was ineffective in failing to request a cautionary instruction regarding the jurors' consideration of Shelton's prior convictions.

4. Trial counsel was ineffective in failing to move for a mistrial under *Brady*[2] upon discovering the existence of a purchase form prepared the day of the undercover buy that had not been turned over during discovery.

## II.  DISCUSSION

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  When reviewing a state court's assessment of an ineffective assistance of counsel claim, federal review is "doubly deferential," because the deferential standard of review under the habeas statute overlaps with the deferential standard under *Strickland v. Washington*, 466 U.S. 668 (1984).  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).  In other

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963) (recognizing a prosecutor's due process duty to disclose material, potentially favorable evidence in its possession to the defendant before trial).

words, the federal court is to afford "both the state court and the defense attorney the benefit of the doubt." *Bart v. Titlow*, 571 U.S. 12, 15 (2013).

A federal district court reviewing a § 2254 petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). Shelton has exhausted each issue raised in his § 2254 petition, and there is no need, therefore, to consider procedural default. The court will address each other claim under the required standard of review.

### A. Chain of Custody

Shelton's claim that the chain of custody was not sufficiently established is a state law evidentiary claim, not a claim under the United States Constitution. Under 28 U.S.C. § 2254(a), "It is not the province of a federal habeas court to reexamine state court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Because the chain of custody claim rests solely on Virginia law, it is not cognizable on federal habeas review unless petitioner alleges that the state court's application of the statute is a cognizable violation of the federal constitution. *See, e.g., Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998). Accordingly, the court must dismiss this claim as non-cognizable.

## B. Sufficiency of the Evidence

The Supreme Court has recognized that sufficiency of the evidence to support a conviction beyond a reasonable doubt is a constitutional claim under the Due Process Clause of the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 322 (1979). Even though the words "due process" do not appear in Shelton's petition for this claim, Shelton has alleged the issue with sufficient specificity that it amounts to a claim under the Constitution, laws, or treaties of the United States. The court must now determine whether the decision of the state court on this issue was reasonable under 28 U.S.C. § 2254(d)(1)-(2).

A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state's decision is an "unreasonable application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The question is not whether a federal court believes the state court's decision is incorrect, but whether the decision was unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Likewise, the federal court must presume that a state court's factual findings are correct, and this presumption can be overcome only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Again, the federal court must find more than just an incorrect determination of facts, as "unreasonable determination of the facts" is a "substantially higher threshold. *Schriro,* 550 U.S. at 473.

8

Although Shelton submitted this claim to the Supreme Court of Virginia, the state's highest court, during his direct appeal, the written per curiam opinion of the Court of Appeals of Virginia is the last reasoned state court opinion; thus, this court "looks through" the Supreme Court of Virginia's refusal of the appeal and reviews the reasoning of the Court of Appeals. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (holding that federal habeas court must presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground"). The deferential standard of review prescribed by § 2254(d) will apply in reviewing the court of appeals' opinion.

To prevail on a constitutional claim for insufficiency of the evidence, a petitioner must show that the evidence at trial, in the light most favorable to the government, is such that no rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 324. That is the same standard used by the courts in Virginia: "Whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. Commonwealth*, 677 S.E.2d 280, 282 (Va. 2009) (citing *Jackson*).

The testimony of a single witness, if believed, is sufficient to support a conviction. Credibility of each witness is a matter for the jury to decide, as the finder of fact. Further, "a fact finder's evaluations of credibility are not limited to choosing between competing accounts offered by different witnesses, . . . but often include, as in this case, resolving conflicts in a single witness' testimony, accepting that part of the testimony it deems credible and rejecting the portion it deems incredible." *Commonwealth v. McNeal*, 710 S.E.2d 733 (Va. 2011). Relying upon this standard, the opinion of the Court of Appeal of Virginia concluded that the informant's testimony was sufficient to support the conviction, especially when corroborated by the task

9

force officers' observations of the informant and Shelton in the restaurant and the audio surveillance. This court cannot say that the state court's decision was an unreasonable application of the law, nor was it an unreasonable determination of facts. Accordingly, Shelton cannot prevail on this claim.

### C. Counsel's failure to request a cautionary instruction

As previously indicated, when reviewing a state court's decision regarding ineffective assistance of counsel, a federal court is doubly deferential, that is, deferential to strategy decisions of the lawyer and deferential to the state court's evaluation of the ineffective assistance claim. The two prongs on ineffective assistance of counsel are (1) that counsel's performance was so deficient that she was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The state habeas court found that Shelton failed to establish either deficient performance or prejudice.

The state habeas court held that there was no deficient performance because trial counsel asked the court to instruct the jury that the prior convictions should not be considered as proof of guilt in the charged offense, but the court denied that request. Review of the trial record reveals the following exchange between counsel and the court regarding the prior convictions:

> **THE COURT:** Okay. So when the jury comes back in I am going to basically enter this into evidence and state to the jury that the Defendant stipulates that he is the individual named in the Orders.
>
> **MS. MACKALL [Defense Counsel]:** Right.
>
> **THE COURT:** All right.
>
> **MS. MACKALL:** That is all we are stipulating to. That is right.
>
> **MR. OCCHUIZZO [Prosecutor]:** And that should be fine.
>
> **THE COURT:** All right then. Let's bring the jury back in.

> **MS. MACKALL:** And that the Orders aren't supposed to be used for a scheme or pattern or anything like that. They are thirty years old. I don't think that is the argument.
>
> **THE COURT:** Well, no. They are not being used for . . .
>
> **MS. MACKALL:** It is just for the point of . . .
>
> **THE COURT:** Yeah. Nobody is alleging that.

CCR at 754. The habeas court's factual finding that she asked the court to instruct the jury that the prior convictions could not be used as evidence of guilt is a reasonable determination of fact, given counsel's more specific request that the jury be told the convictions could not be considered as proof of a pattern or scheme. Further, the habeas court's factual finding carries a presumption of correctness under 28 U.S.C. § 2254(e).

Obviously, once the court held that counsel had requested the instruction, then there was no deficiency. Counsel did what Shelton alleges she did not do. Because she requested the instruction, there is no failure to perform, deficient or otherwise.

The state habeas court also held that a failure to request the instruction would not have prejudiced Shelton because of the strong evidence of Shelton's guilt. To establish prejudice under *Strickland*, Shelton would need to show that there was "a reasonable probability that the outcome of the proceedings would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This court cannot say the habeas decision was unreasonable, especially given the other jury instructions in the case. Instruction 11 advised the jury: "You may consider proof of the defendant's prior adjudication of a felony or crime involving moral turpitude as affecting his credibility, but it does not render him incompetent to testify nor shall you consider it as evidence of his guilt of the offense for which he is on trial." CCR at 143. Thus, the jury had been instructed that prior convictions had limited

use. There is nothing unreasonable in the habeas court's decision that an additional instruction limiting their consideration of the prior drug convictions would have changed the outcome of the trial.

Because Shelton has not established either deficient performance or prejudice, he cannot prevail on this claim.

### D. Counsel's failure to move for a mistrial under *Brady*

Under *Brady*, the government violates due process by (inadvertently or purposely) failing to disclose material, exculpatory evidence in the government's possession. *United States v. Savage*, 885 F.3d 212, 220–221 (4th Cir. 2018). To prove such a violation, Shelton must show: (1) that the non-disclosed evidence was favorable to the defendant, (2) that the evidence was material to the defense, and (3) that the government had the evidence and failed to disclose it. *Id.* Evidence is favorable if it is either exculpatory or relevant for impeachment, and it is material if there is a reasonable probability that its timely disclosure would have produced a different result. *United States v. Jeffers*, 570 F.3d 557, 573 (4th Cir. 2009). Shelton contends that the purchase form Investigator Kahle used to refresh his memory during his testimony, which had not previously been provided to the defense, was exculpatory because the form listed the "approximate drug weight" of the purchased cocaine as 14 grams, which differed from the forensic lab's certificate of analysis, placing the weight at 17.0863 grams, plus or minus 0.0030 grams. Because that form had not been provided to counsel before trial, Shelton maintains that counsel should have moved for a mistrial.

The state habeas court found neither deficient performance nor prejudice. Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. The

reviewing court must not rely upon "the distorting effects of hindsight," but must presume counsel's decisions and actions fell within the wide range of reasonable strategy decisions." *Id.* at 689–90. Applying that standard, the state habeas court held that counsel could reasonably have determined that the discrepancy in the drug weight was not exculpatory because it still supported the government's allegation that Shelton sold a quantity of cocaine to the informant. The weight of the drug was not an element of the offense, only the nature of the substance. The state court's conclusion is a reasonable application of the *Strickland* standard to find that Shelton has not shown deficient performance.

Although failure to show deficient performance, by itself, is sufficient to defeat Shelton's claim, the state habeas court also found that counsel had the opportunity to use the form at trial to question Investigator Kahle, and that having the form earlier would not result in the probability of a different outcome. Further, there is no *Brady* violation if the defense has the evidence in reasonable time to use it effectively at trial. *Jeffers*, 570 F.3d at 573. Accordingly, the state court found that Shelton could not prevail on the prejudice prong, either. Again, there is nothing unreasonable about the state habeas court's decision, and the court cannot grant relief on this claim.

### III. CONCLUSION

For the reasons stated, the court will grant the respondent's motion to dismiss. Further, when issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented were adequate to

deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Shelton has not made such a showing in this case.

    An appropriate Order will be entered.

    Entered: September 20, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge